| | |
|---|---|
| **LINCOLN HARBOR ENTERPRISES, LLC and LINCOLN HARBOR YACHT CLUB CONDOMINIUM ASSOCIATION, INC.,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **HARTZ MOUNTAIN INDUSTRIES, INC., and PORT IMPERIAL FERRY CORP. d/b/a NY WATERWAY,** <br><br> **Defendants.** | Civ. No. 2:19-12520 (KM-MAH) <br><br> **OPINION** |

### MCNULTY, U.S.D.J.:

This action concerns the effect of ferry wakes on a Hudson River commercial marina and the natural environment of New Jersey. Plaintiff Lincoln Harbor Enterprises ("LHE") owns condominium units as well as boat slips in a marina which is operated by Plaintiff Lincoln Harbor Yacht Club Condominium Association, Inc. ("LHYCCA"). (Compl. ¶¶ 2-3 (DE 1)).[1] The action is brought against Hartz Mountain Industries, Inc. ("Hartz Mountain"), a developer of real estate near the marina, and NY Waterway (a d/b/a name for

---

[1]  Citations to certain record items will be abbreviated as follows:

DE = Docket entry number

Compl. = Complaint and Jury Demand (DE 1)

Def. Brf. = Hartz Mountain's Brief in Support of Motion to Dismiss (DE 12-1)

Pl. Brf. = Plaintiffs' Memorandum in Opposition (DE 32)

Def. Reply Brf. = Hartz Mountain's Reply Brief in Further Support of Motion to Dismiss (DE 38)

Port Imperial Ferry Corp.), which operates ferries at various sites along the Hudson River.

Currently before the Court is the motion of Defendant Hartz Mountain to dismiss statutory claims raised against it under the New Jersey Environmental Rights Act, as well as the common law claims, excepting the claim of nuisance. *See* Fed. R. Civ. P. 12(b)(6). Hartz Mountain has also moved for an award of attorneys' fees. Defendant NY Waterway joins in Hartz Mountain's motion to dismiss (DE 22), but makes no independent arguments on its own behalf.

For the reasons set forth in more detail below, the motion to dismiss the statutory and certain common law claims is granted in part and denied in part. The motion for attorneys' fees is denied, but costs are awarded.

## I.    FACTUAL BACKGROUND

In considering a motion to dismiss, the Court is required to treat the facts alleged in the complaint as true and to draw all reasonable inferences in the plaintiffs' favor. I summarize those allegations as follows:

In or around 1986, Hartz Mountain came to terms with the Township of Weehawken to build a mixed-use waterfront development along the Hudson River ("Lincoln Harbor Marina"). (Compl. ¶ 14). In 1988, it obtained a permit from the United States Army Corps of Engineers ("ACE") to construct two ferry slips within the property. (*Id.* ¶ 16). The application proposed a small-scale ferry operation, intended to transport employees working at Lincoln Harbor Marina, located between Piers H and D, to and from New York City using the existing Port Imperial Ferry. (*Id.* ¶ 19). The ferry was to run twice per day. (*Id.*).

The ACE granted the application for a ferry landing including the slips (the "Ferry Landing"), citing in a Statement of Findings that the "proposed activity [would] not have a significant adverse effect on the quality of the human environment and as such an environmental impact statement need not be prepared for [the] permit decision." (*Id.* ¶ 21). Further, the ACE noted that since the Ferry Landing was "to be located between two existing piers, well

2

within the pierhead line, no damage from existing wakes [was] expected." (*Id.*). The Ferry Landing was constructed without any wake mitigation devices or structures. (*Id.* ¶ 24).

Since then, Lincoln Harbor Marina became increasingly developed. The Ferry Landing now services patrons and employees of various businesses, hotels, and condominiums. (*Id.* ¶ 36). Hartz Mountain recently completed a parking deck, rendering the Ferry Landing accessible to additional members of the general public. (*Id.*).

The ferries themselves are not operated by Hartz Mountain, but by Defendant NY Waterway, with which Hartz Mountain has contracted to provide ferry services. (*Id.* ¶ 41). NY Waterway is the major ferry service provider in the Hudson River. (*Id.* ¶ 66). Its ferries are designed to maximize speed, a goal inimical to that of minimizing wake. (*Id.* ¶ 67). Plaintiff alleges that Hartz Mountain and NY Waterway act in concert to operate the ferry schedule for the transportation of Hartz Mountain invitees. (*Id.* ¶ 46). Ferries operate to and from Lincoln Harbor Marina dozens of times every day, generating "destructive" wakes. (*Id.* ¶ 41-44). Plaintiffs allege that the wakes from these activities have destroyed all of its floating pontoon boat slips in Lincoln Harbor Marina, and cite other significant and expensive damage. (*Id.* ¶¶ 60, 82). They also allege that the ferry activities damage the environment. (*Id.* ¶ 102).

Central to Plaintiffs' claims is the allegation that the current, high-volume ferry activity is not consistent with the scope of operations anticipated by the 1988 ACE application and permit. Plaintiff argues that the circumstances have changed so significantly that the ferry activity should be considered "un-authorized." (*Id.* ¶ 154). Attempts by Plaintiffs to encourage the ACE to reevaluate the permit have been unsuccessful. (*Id.* ¶ 152).

Plaintiffs seek damages, as well as various forms of equitable relief. (*Id.* ¶158). Plaintiffs had previously filed a substantially similar claim against the Defendants, which was voluntarily dismissed. *Lincoln Harbor Enterprises, LLC*

and *Lincoln Harbor Yacht Club Condominium Association, Inc. v. Hartz Mountain Industries, Inc., et al.*, No. 2:18-cv-16648 (the "Initial Action").

## II.   APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that

4

are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim). That exception rests on the rationale that "[w]hen a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### III.   ANALYSIS

Section III.A discusses the general applicability of the Environmental Rights Act to Plaintiffs' allegations. Section B considers whether Plaintiffs have successfully stated a claim under any federal or New Jersey statutes. Section C discusses whether certain of Plaintiffs' non-statutory claims are barred by the statute of limitations. The motion is not directed to Plaintiffs' nuisance claims. Section D analyzes whether Defendants ought to be awarded attorneys' fees.

### A.   Applicability of the Environmental Rights Act

Plaintiffs allege that the Defendants' actions violate various statutes designed to regulate and protect the environment and waterways. (Compl. ¶¶ 103, 119). These enumerated statutes do not provide for a private right of action. However, New Jersey has enacted the Environmental Rights Act ("ERA"), which provides that "[a]ny person may commence a civil action in a

5

court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." N.J. Stat. Ann. § 2A:35A-4(a). This amounts to a piggy-back private right of action for the violation of statutes and regulations designed to protect the environment. N.J. Stat. Ann. § 2A:35A-4.

Defendants have put forth several arguments to the effect that the ERA does not apply here.

Defendants' first such argument is that an ERA claim requires an allegation of government inaction with respect to the relevant environmental issue. (Def. Brf. at 8). It is true that "the primary goal of the ERA is to limit lawsuits by private litigants to those instances where the government has not acted." *Mayor and Council of Borough of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1054 (D.N.J. 1993) (citations omitted). But that general statement of purpose imports no requirement that "a plaintiff must specifically plead that the government has failed to act . . . ." *Id.* Accordingly, this argument fails as a basis for Rule 12(b)(6) dismissal.

Next, Defendants argue that Plaintiffs have not sufficiently pled that Defendants' actions have damaged and continue to damage the natural environment of New Jersey. (Def. Brf. at 8-13). The ERA broadly provides that its private right of action exists for violations of "any statute . . . designed to prevent or minimize pollution, impairment or destruction of the environment." N.J. Stat. Ann. § 2A:35A-4(a). The definitions section expands on this concept:

> "Pollution, impairment or destruction of the environment" means any actual pollution, impairment or destruction to any of the natural resources of the State or parts thereof. It shall include, but not be limited to, air pollution, water pollution, improper sewage disposal, pesticide pollution, excessive noise, improper disposal of refuse, impairment and eutrophication of rivers, streams, flood plains, lakes, ponds or other water resources, destruction of seashores, dunes, wetlands, open spaces, natural areas, parks or historic areas.

N.J. Stat. Ann. § 2A:35A-3. Defendants rightly note that the term "natural resources," as used in this definitional section, is not itself defined. I do not see a justification, however, for adopting their proffered, restrictive definition of "natural resources," drawn somewhat arbitrarily from New Jersey's Spill Compensation and Control Act. The ERA's definition includes a long and illustrative list of possible impairments to the environment. It expressly includes "impairment . . . of rivers" and "destruction of seashores." Defendants' proffered narrow definition of "natural resources" is not compatible with this broad language. It is plausible that, say, damage to the shoreline of the Hudson River, *if* alleged, would be an actionable environmental harm under the ERA.

Defendants' third, stronger argument, however, is that Plaintiffs have failed to sufficiently allege damage to the environment; in reality, Defendants say, Plaintiffs only allege damage to their own property. (Def. Brf. at 9-12). The ERA is designed to allow injunctive relief against harm to the environment. To maintain the predicate statutory violations underlying their ERA claim, Plaintiffs would need, as discussed below, to allege environmental harm. Plaintiffs frequently and forcefully allege that wakes generated by the ferries have damaged Lincoln Harbor Marina, its boat slips, and so on. There is very little, however, in the way of allegations that the wakes are damaging the environment. The only such allegation is the highly conclusory claim that "Defendants Hartz Mountain and NY Waterway . . . have acted and continue to act in ways damaging to the environment . . . ." (Compl. ¶ 148). Such language gives no indication of what aspect of the "environment" has been damaged, or how exactly the wakes have done this. That deficiency is fatal under the *Twombly/Iqbal* standards.

Plaintiffs' briefing, it is true, suggests that they *could* plausibly allege that the same wakes which are so destructive to the Lincoln Harbor Marina are impairing the shoreline of the Hudson River. Thus amendment would perhaps

not be futile, and leave to amend in this manner is granted.[2] To head off a wasteful process by which complaints are corrected one flaw at a time, I will continue the discussion for the guidance of the parties—not ruling, but assuming *arguendo*, that this flaw could be corrected.

Finally, Defendants argue that Plaintiffs still fail to satisfy the requirement of the ERA that if a statute has been violated there must also be "a likelihood that the violation will recur in the future." N.J. Stat. Ann. § 2A:35A-4. That argument is premised to some degree on Defendants' position that there is no environmental violation at all, whether past, present, or future. (Def. Brf. at 12). But if the alleged harm to the environment can be shown to violate environmental statutes, as discussed below, then it plausibly flows that the harm is likely to continue. The ferries run every day, and each ferry run creates an allegedly damaging wake. It is reasonable to infer that the ferries will continue to run at this rate, absent any indication otherwise from Defendants.

I will grant the motion to dismiss insofar as environmental damage has not been alleged. I will grant leave to amend, however, to allege environmental damage. The remainder of the discussion assumes *arguendo* that the ERA applies.

---

[2]     Plaintiffs draw attention to various public reports regarding the damaging effects of ferry wakes to the environment. (Pl. Opp. at 19-21). However, these references in the briefing do not serve to amend the Complaint. *See, e.g.*, *Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted); *Talley v. United States*, No. 11-1180, 2014 WL 282680, at *5 (D.N.J. Jan. 24, 2014) ("[A] complaint cannot be amended through the brief of a party in opposition to a motion to dismiss.").

In addition, during oral argument, Plaintiffs' counsel suggested that Defendants' activities impaired the public from accessing and enjoying the Hudson River. This prevention is, allegedly, in conflict with the NJDEP permit. But even if this is true, Plaintiffs have not specified the relevant permit violation and have provided no authority for the inference that those actions constitute damage to the environment.

## B. Violations of Environmental Statutes

The ERA requires an underlying violation of some environmental statute or regulation. Plaintiffs offer several possibilities. Scattered throughout the Complaint are citations to the Rivers and Harbors Act of 1899, as amended, 33 U.S.C. §§ 401-476, *et seq.*; the Coastal Zone Management Act of 1972, 16 U.S.C. §§1451-1464; the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347; the Coastal Zone Management Rules, N.J.A.C. § 7:7-1.1 *et seq.*; and the Waterfront Development Act, N.J. Stat. Ann. § 12:5-1 *et seq.* I discuss the federal, and then the State, theories.

### 1. Violations of Federal Statutes

Defendants argue as a threshold matter that all of the claims based on federal environmental statutes are invalid because the ERA provides a right to sue only for violations of New Jersey state environmental laws. (Def. Brf. at 14-15). In support, Defendants cite to cases expressly recognizing ERA causes of action based on violations of state statutes. They cite no authority, however, for the proposition that the ERA *excludes* claims based on violations of federal statutes.[3] The statute, by its plain language, confers a cause of action based on violation of "*any* statute, regulation or ordinance which is designed to prevent or minimize . . . destruction of the environment." N.J. Stat. Ann. § 2A:35A-4(a) (emphasis added). Defendants' argument, based on a mere absence in the case law, is too weak to overcome this clear statutory language. I hold that the ERA can be used to allow a claim for violations of federal environmental statutes.

I therefore turn to the federal statutes cited by the Plaintiffs. Defendants argue, with some justification, that merely citing an entire statute by title and claiming it has been violated is insufficient to state a claim under the

---

[3]     One of the cited cases refers to a right of action under the ERA for violation of "New Jersey environmental statutes," and refers to the ERA as a remedy for inaction by "the government." *Rockaway*, 811 F. Supp. at 1054-1055. The ERA claims in that case, however, were made under state law. The case did not discuss the issue of whether ERA covers federal environmental violations; any argument by negative implication that federal statutes are excluded is unconvincing.

*Twombly/Iqbal* standards. (Def Brf. at 17). The Plaintiffs clearly could have done much more to key their factual allegations to the elements of these federal statutory violations. Indeed, in amending the complaint, Plaintiffs ought to cite with more specificity the particular statutory provisions, whether state or federal, that Defendants have allegedly violated, and state factually how the elements of such violations are met.[4]

This is not a complaint, however, that lacks factual allegations. To some extent, it is possible for the reader to apply the Rule 12(b)(6) standard to such facts as are alleged, and I will do so.

Regarding the Rivers and Harbors Act, 33 U.S.C. § 403, no violation is sufficiently alleged. This Act requires that structures in navigable rivers be built only according to "plans recommended by the Chief of Engineers and authorized by the Secretary of the Army . . . ." 33 U.S.C.A. § 403. There is no allegation that the structures erected by Defendants did not comply with this requirement; rather, the allegation is that the subsequent *use* of the piers became excessive. This statutory claim is dismissed.

Claims relating to the Coastal Zone Management Act of 1972 fare similarly. Plaintiffs have not cited, nor can I discover, any particular provision of that statute that would be violated by the facts alleged here. The statute and associated regulations require that the applicant certify in its permit application to the relevant federal agency that the proposed action complies

---

[4]      During oral argument, Plaintiffs' counsel explained that the *Twombly/Iqbal* standards were in fact met with respect to statutory violations. Because, the argument went, the statutes cited by Plaintiffs were listed on the ACE permit, Defendants were on notice that they would need to comply with them. Subsequent stages of litigation would fill in the gaps, as expert witnesses would explain exactly which provisions were violated. I disagree; more specificity is required. Plaintiffs cannot simply list multiple statutes by title, but must point to the statutory provisions that they say are being violated, and state how, factually, they are being violated.

Plaintiffs have raised other, non-environmental statutory violations; these, however, seem to have been alleged in the context of establishing negligence or nuisance. *See, e.g.,* Compl. ¶ 91. The analysis here is confined to the allegations of a private right of action via the ERA for environmental violations.

with an approved state coastal management program. *See* 16 U.S.C. §
1456(c)3; 33 C.F.R. § 320.3(b); 33 C.F.R. § 320.4(h). Defendants seem to have
done just that. (DE 1-1 at 13).

Plaintiffs' real gripe is not that the initial permit application was
inaccurate, but that the Defendants did not update their permit once
circumstances had changed. Plaintiffs draw attention to 33 C.F.R. § 325.7, the
regulation describing ACE permit modifications. (Compl. ¶153). The relevant
section reads as follows:

> *The district engineer may reevaluate the circumstances and
> conditions of any permit,* including regional permits, either on his
> own motion, at the request of the permittee, or a third party, or as
> the result of periodic progress inspections, and initiate action to
> modify, suspend, or revoke a permit as may be made necessary by
> considerations of the public interest. In the case of regional
> permits, this reevaluation may cover individual activities,
> categories of activities, or geographic areas. Among the factors to
> be considered are the extent of the permittee's compliance with the
> terms and conditions of the permit; whether or not circumstances
> relating to the authorized activity have changed since the permit
> was issued or extended, and the continuing adequacy of or need
> for the permit conditions; any significant objections to the
> authorized activity which were not earlier considered; revisions to
> applicable statutory and/or regulatory authorities; and the extent
> to which modification, suspension, or other action would adversely
> affect plans, investments and actions the permittee has reasonably
> made or taken in reliance on the permit. *Significant increases in
> scope of a permitted activity will be processed as new applications
> for permits in accordance with § 325.2 of this part, and not as
> modifications under this section.*

33 C.F.R. § 325.7(a) (emphasis added). I assume *arguendo* that this provision
would qualify as a statute or regulation designed to protect the environment, as
required by the ERA. What the regulation does, however, is grant the district
engineer authority to reevaluate permits, and it describes the relevant factors
and procedures. The directive that "significant increases in scope" will be
processed as "new applications" falls short of imposing an affirmative obligation
on the permittee to request a new permit. If the Plaintiffs believe this provision
has been violated, they will have to state their basis in any amended pleading.

Similarly, the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347, does not immediately announce itself as a source of an ERA claim based on the facts alleged in this complaint. Plaintiffs state that Section 4332(c) requires the ACE to "supplement the Environmental Impact Statement (EIS) or Environmental Assessment (EA) if there are significant new circumstances or information relevant to environmental concerns." (Compl. ¶ 162). On its face, this provision states an obligation that falls on the ACE, not on the Defendants. Again, more specificity will be required if the court is to infer that Defendants have violated the law.

Accordingly, Plaintiffs have not plausibly claimed that the Defendants have violated any of the federal statutes described in the Complaint. The federal-law-based claims under the ERA, relating to the Rivers and Harbors Act, the Coastal Zone Management Act of 1972, and the National Environmental Policy Act, are dismissed without prejudice.

### 2. *Violations of New Jersey Statutes*

Plaintiffs have alleged, again under the aegis of the ERA, that the Defendants violated two New Jersey statutes or regulations: the Coastal Zone Management Rules, N.J.A.C. § 7:7-1.1 *et seq.,* and the Waterfront Development Act, N.J. Stat. Ann. § 12:5-1 *et seq.* (Compl. ¶¶ 102, 119).

With respect to the Coastal Zone Management Rules (the "CZM Rules"), Plaintiffs have not specified which provisions of this comprehensive and wide-ranging scheme Defendants allegedly violated. Such a deficiency would ordinarily suffice to send Plaintiffs back to the drafting table. *See Khorchid v. 7-Eleven, Inc.,* No. 18-8525, 2019 WL 3812472 (D.N.J. Aug. 14, 2019) (dismissing complaint that generally cited a statute but failed to specify the claimed violation). The Plaintiffs *did* cite specific language from the CZM Rules in their pre-suit notice to the Defendants, however. (Compl. Exhibit 8, page 4). I will assume that is what is meant, and confine my analysis to that.

Plaintiffs' most salient argument is that Defendants have not taken any steps to mitigate the environmental damage caused by their activities under (or

in excess of) the authorization of the ACE permit. (Compl. ¶ 76). The CZM Rules require permittees to "take all reasonable steps to prevent, minimize, or correct any adverse impact on the environment resulting from activities conducted pursuant to the permit, or from noncompliance with the permit." N.J.A.C. § 7:7-27.2(c)(5). Defendant NY Waterway is not alleged to be a permittee. Defendant Hartz Mountain, however, is; it received the ACE permit for the Ferry Landing.

The complaint alleges that Hartz Mountain has taken no steps at all to mitigate the damage of the activities permitted by the permit, namely the construction of the Ferry Landing for specified purposes. The requirement to take such steps does not have a temporal limit; a permittee must minimize environmental damage on an ongoing basis, even after the permitted construction is complete. As discussed above, Plaintiffs have not adequately alleged an adverse impact on the environment. Assuming that objection can be overcome by amendment, however, the Complaint may be viewed as plausibly alleging that Hartz Mountain's actions and inactions violate the CZM Rules.

Turning now to the New Jersey Waterfront Development Act, the complaint again fails to pinpoint a specific provision of this complex statute that the Defendants have violated. However, in their briefing, they draw attention to N.J. Stat. Ann. § 12:5-3(a), which requires that plans for waterfront development be approved by the New Jersey Department of Environmental Protection ("NJDEP"). (Pl. Opp. at 30). I will confine my analysis to that.

Plaintiffs allege that the Ferry Landing was built without a NJDEP permit. (Compl. ¶ 23). That allegation, on its face, would sufficiently state a plausible claim that Defendant Hartz Mountain, as the builder of the Ferry Landing, violated the New Jersey Waterfront Development Act. It is stated,

however on information and belief, and the defendants point to what they say is just such a permit.[5]

This claim also fails under the requirement of the ERA that the violation is likely to recur in the future. The Ferry Landing was built long ago. There is been no allegation that Hartz Mountain intends to build another. The harmful ferry *activities*—the real source of the complaint here—are not alleged to require a permit under this statute. Therefore, the Plaintiffs have failed to state a claim that the violation of this statute is actionable. Finally, as was the case under the CZM Rules, the only permittee here is Hartz Mountain; there is no viable cause of action pled against NY Waterway, which is not a permittee at all.

Accordingly, the New Jersey statutory claims (at least relating to the CZM Rules) could be considered successfully pled against Defendant Hartz Mountain, but not against Defendant NY Waterway, *if* an amended complaint can make an adequate allegation of adverse impact to the environment.

### C. Statute of Limitations

Setting aside the statutory claims discussed above, the Defendants have moved to dismiss "Plaintiffs' remaining claims" based on the statute of limitations. (Def. Brf. at 22). The applicable period, they say, is the six-year limitation relating to "tortious injury to real or personal property." N.J. Stat.

---

[5]    Plaintiffs' "information and belief" is allegedly based on their unsuccessful attempt to obtain a copy of the permit from both NJDEP and ACE. Defendants argue in their briefing that Hartz Mountain had in fact obtained an NJDEP permit, citing an exhibit to the Complaint itself. (Def. Reply Brf. at 8, citing DE 1-4) They attach a copy of what purports to be that permit in a separate declaration (DE 34-2), and counsel stated at oral argument that this is the relevant permit. Defendants also note that in Hartz Mountain's ACE permit application, there is an indication that "[b]y letter dated 17 June 1988, the subject proposal has been approved for a modification-in detail by the [NJDEP] Waterfront Development Permit, permit number 85-0072-1." (DE 1-1 at 13).

Permitting is concededly a complex process. But should this claim—which is being dismissed on other grounds—be revived by amendment, the Court will expect to see some clarity from both sides as to these matters of public record.

Ann. § 2A:14-1. I analyze this issue in relation to the Plaintiffs' tort claims, excepting nuisance, as to which Defendants have not moved (Def. Repl. at 9).[6]

Both sides cite *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077 (N.J. 1996). *Russo* involved flood damage that was discovered by those plaintiffs more than six years before they filed their complaint. *Id.* at 1084. The New Jersey Supreme Court found that multiple claims were still nevertheless actionable, citing the "continuing tort doctrine." *Id.* at 1086-1088. Defendants here argue that the continuing tort doctrine applies only to the claims of nuisance. (Def. Reply Brf. at 9). *Russo* itself, however, makes no such argument, and lists cases applying the doctrine to claims other than nuisance, including negligent exposure of a toxin and trespass. *Id.* at 1085.

The court in *Russo* did bar one claim under the statute of limitations—a claim of negligent construction. *Id.* at 1091. That claim was rejected, however, because it involved, not an ongoing or recurring tort, but an alleged breach of duty that happened only once—at the time of construction, more than six years before the claim was brought. *Id.* In our case, Plaintiffs have alleged that the Defendants breach their duty every time they cause a ferry to create a damaging wake, an event which occurs dozens of times a day. Theirs is not the kind of claim barred by *Russo*.

Defendants argue further that Plaintiffs' prayer for $25 million in "permanent" damages to property renders this a fixed and "permanent" tort, rather than a continuing one. (Def. Reply Brf. at 9-10). In support, Defendants cite a case interpreting *Russo*, *Haddonbrook Associates v. General Elec. Co.*, 427 F. App'x 99 (3d Cir. 2011). There, the Third Circuit, in affirming the District Court's grant of summary judgment, agreed with the conclusion that seeking damages for diminution in property value supported an implication

---

6    Defendants state that this statute of limitations applies to Plaintiffs' ERA claims as well. The statute of limitations, however, by its terms applies to "action[s] at law." As to the ERA, Plaintiffs seek only equitable relief. To find the ERA claims untimely, further analysis would be required.

that the alleged harm was not a continuing nuisance. *Id.* at 102. Therefore, the claim was barred by the six-year statute of limitations. *Id.* But the prayer for "permanent" damages was just one factor that the Third Circuit considered in determining whether the injury constituted a continuing tort. *Id.* Moreover, in *Haddonbrook,* evidence showed that "the value of the property was completely destroyed well before the six-year period prior to Haddonbrook's suit." *Id.* Not so here. Plaintiffs here have alleged a "new injury" within the limitations period, which is "necessary to apply the continuing tort doctrine." *Id.*

The statute of limitations is an affirmative defense, which may be adjudicated at the motion to dismiss stage only if its applicability is clear from the face of the complaint and facts properly considered on a Rule 12(b)(6) motion. *See Fried v. JP Morgan Chase & Co.,* 850 F.3d 590, 604 (3d Cir. 2017); *see also Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978). The damages in this case, including damages for destruction of Lincoln Harbor's boat slips, cannot be said, from the Complaint, to have definitely accrued prior to the six-year limitation period. Defendants' $25 million number, by the way, is not literally asserted in unitary fashion by the Plaintiffs; Defendants seem to have calculated it by adding together a claim for $10 million in previously suffered damages and a statement that $15 million in damages are anticipated in the future. (Compl. ¶¶ 99-100 against Hartz Mountain; ¶¶ 118, 121 against NY Waterway). It cannot be said that Plaintiffs have alleged $25 million in past damages that accrued more than six years prior to the filing of the complaint.

Moreover, there are further allegations of ongoing tortious activity. Plaintiffs argue that, despite previous litigation and negotiation with Defendants, both NY Waterway and Hartz Mountain have committed new injuries. For example, they allege that NY Waterway "continues to operate" its ferries in a manner that harms Plaintiffs' property. (Compl. ¶ 112). Plaintiffs allege damages that have accrued within the six-year limitation period. (*Id.* ¶ 118). Whether this is accurate remains to be seen. But the Plaintiffs have

16

alleged it, and given the specific description of the damages and the fact that NY Waterway operates its ferries every day, the allegation is plausible.

Similarly, Plaintiffs have alleged that Hartz Mountain has in fact "increase[d]" the magnitude of its harms to the Plaintiffs. (*Id.* ¶ 86). It is plausible, drawing reasonable inferences in the Plaintiffs' favor, that this increase has occurred within the applicable six-year period, thereby creating a new breach and harm.

The statute of limitations may apply at some point to limit the damages recoverable. *See Russo*, 675 A.2d at 1094 (limiting potential damages to those incurred within the applicable limitation period). At the motion to dismiss stage, however, I cannot conclude that Plaintiffs' claims are wholly barred by the six-year statute of limitations. The motion to dismiss the tort claims on statute of limitations grounds is denied.

### D. Attorneys' Fees & Costs

#### 1. *Prevailing-party fees in this action*

Defendants, assuming they prevail on their motion to dismiss, have moved for an award of attorneys' fees pursuant to the relevant section of the ERA, N.J. Stat. Ann. § 2A:35A-10(a). That provision states that "[i]n any action under this act the court may in appropriate cases award to the prevailing party reasonable counsel and expert witness fees . . . where the prevailing party achieved reasonable success on the merits." Defendants cite to *Central Bergen Properties v. Crown Leisure Products, Inc.*, No. 94-4335, 1996 LEXIS 22483 (D.N.J. Oct. 18, 1996) for the proposition that a defendant in an ERA action may receive attorneys' fees even when its motion to dismiss in granted in part and denied in part. (Def. Reply Brf. at 10). I will assume that is a theoretical possibility, although the court in *Central Bergen* in fact denied attorneys' fees to the defendant. *Id.* at *40.

The ERA provision allows the Court, within its discretion, to award attorneys' fees to a "prevailing party." I do not choose to exercise my discretion to award interim fees, based on partial victories on particular counts (which in

any event are subject to amendment). I do not find it appropriate to award prevailing-party attorneys' fees at this stage. The application is denied without prejudice to renewal at a time when it is more clear which is the "prevailing party" in this action.

### 2. Rule 41(d) fees and costs for prior dismissed action

Defendants also request attorneys' fees and costs in connection with the Initial Action (now dismissed) because it was filed by the Plaintiffs in violation of the ERA's 30-day pre-suit notice requirement. (Def. Reply Brf. at 11). Federal Rule of Civil Procedure 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court [] may order the plaintiff to pay all or part of the costs of that previous action . . . ."

The ERA provides that all suits must be preceded by 30 days' written notice to the defendants, as well as the New Jersey Attorney General and the NJDEP. N.J. Stat. Ann. § 2A:35A-11. The plaintiffs did provide written pre-suit notice by letter on November 20, 2018. Instead of waiting 30 days, however, they filed the complaint in the Initial Action just nine days later, on November 29, 2018. (Initial Action, DE 10-2 therein at 4; DE 1 therein).

There is an exception to the notice requirement where the plaintiff "can show that immediate and irreparable damage will probably result . . . ." N.J. Stat. Ann. § 2A:35A-11. Plaintiffs' complaint in the Initial Action contained a footnote stating that irreparable harm would occur if they were forced to provide the full 30 days' pre-suit notice. (Initial Action, DE 1 therein at 30 n. 7). Still, nothing in that footnote rose above the level of say-so. Plaintiffs were represented by sophisticated counsel who were aware of the notice period, and I see no basis to conclude that permitting the entire 30-day notice period to run before filing suit would have crossed the line to "irreparable" damage.

Defendant Hartz Mountain moved to dismiss the Initial Action for insufficient pretrial notice.[7] Plaintiffs, in response, voluntarily dismissed the Initial Action. (Initial Action, DE 18 therein). Having waited out the 30-day notice period, plaintiffs then filed this, the current action. Federal Rule of Civil Procedure 41(d) therefore applies, since it allows for an award of costs if the plaintiff files a new action, having "previously dismissed an action."

An issue arises as to whether attorneys' fees are recoverable "costs" under Rule 41(d). The presumptive American Rule, of course, is to the contrary, as is the usual practice of assessing costs of litigation in this District. *See* Fed. R. Civ. P. 54; D.N.J. Loc. Civ. R. 54.1.

As it happens, there is recent guidance from the U.S. Court of Appeals for the Third Circuit. Choosing one strand of a three-way Circuit split, the Court held that attorneys' fees are not routinely included in the Rule 41(d) definition of "costs," but are recoverable under Rule 41(d) when the underlying substantive statute defines costs to include attorneys' fees:

> We therefore adopt the Underlying Substantive Statute Interpretation of Rule 41(d) and hold that "costs" in Rule 41(d) includes attorneys' fees only where the underlying statute defines 'costs' to include attorneys' fees. Because in this case there is no applicable underlying substantive statute that defines "costs" as including attorneys' fees, the District Court's Order denying the award of those fees will be affirmed.

*Garza v. Citigroup Inc.*, 881 F. 3d 277, 284 (3d Cir. 2018).[8]

---

[7] Hartz Mountain also made arguments relating to the Rivers and Harbors Act (Initial Action, DE 10-1 therein at 9-10), which were in part recapitulated, albeit by a different law firm, in the instant motion to dismiss. Hartz Mountain, by the way, was the only party that moved to dismiss in the Initial Action; the Rule 41(d) motion for fees relates only to Hartz Mountain.

[8] That approach was anticipated in this District by *Anders v. FPA Corp.*, No. CIV. 93-2830, 1995 WL 785109 (D.N.J. Apr. 24, 1995). *Anders*, however, was potentially a bit broader than the later-decided and controlling *Garza* case. *Anders* held that costs under Rule 41(d) would include attorneys' fees where available, not only pursuant to the underlying substantive statute, but also "under a fee-shifting statute, rule or other authority in the previously dismissed case." *Id.* at *3

Attorneys' fees provisions ordinarily are intended to provide an incentive to plaintiffs, so that they can find attorneys willing to bring cases under remedial statutes. In conjunction with Rule 41(d), however, an attorneys' fees provision plays a different role: it provides a small disincentive to the resumption of dismissed cases. Where a party otherwise entitled to fees is content to let the matter drop, the parties to the dismissed case are left in that posture. Only where the opposing party restarts litigation does it expose itself to fees that could have been awarded in the prior case.

Now the ERA does not literally "define" costs. *See Garza*, 881 F.3d at 284. It does, however, provide explicitly that "the court may in appropriate cases award to the prevailing party reasonable counsel and expert witness fees . . . where the prevailing party achieved reasonable success on the merits." N.J. Stat. Ann. § 2A:35A-10. It would be *too* literal, I think, to require that the underlying substantive statute contain a "definition" of the term "costs"; few do. The better approach is exemplified by *LegalForce, Inc. v. LegalZoom.com, Inc.*, a case decided recently by the U.S. District Court for the Northern District of California. 2019 WL 1170777 (N.D. Cal. Mar. 13, 2019). *LegalZoom* held that the Lanham Act, although it does not define "costs" as such, contains a fee-shifting provision that is sufficient to trigger the Rule 41(d) analysis. *Id.* at *2.[9]

So the question becomes this: Would attorneys' fees have been recoverable under the ERA? The answer is yes only if obtaining the dismissal of the Initial Action because it was filed 21 days too early makes Hartz Mountain a "prevailing party" which has "achieved reasonable success on the merits." N.J. Stat. Ann. § 2A:35A-10(a). As a matter of statutory interpretation, I make

---

[9]    As it turned out, however, the *LegalZoom* court did not award fees, because it found that the case was not "exceptional," a prerequisite to such an award under the Lanham Act. 2019 WL 1170777 at *2. In *Anders*, too, the underlying statute provided for an award of fees to a successful insurance "claimant," a provision held sufficient to trigger Rule 41(d). The court ultimately denied fees, however, finding that the party seeking fees did not meet the statutory definition of a "claimant." 1995 WL 785109 at *5.

no such finding. As a matter of the Court's discretion, I would not grant an award of attorneys' fees in these circumstances.

Hartz Mountain's victory, while technically a dismissal, constituted little more than a temporary advantage. Hartz is standing on its bare procedural right to 30 days' pre-suit notice. The notice provision is not really for the benefit of defendants anyway— it is primarily intended to allow the government to intervene in the case or otherwise respond. *Player v. Motiva Enterprises LLC*, No. CIV. 02-3216, 2006 WL 166452, at *14 (D.N.J. Jan. 20, 2006), *aff'd*, 240 F. App'x 513 (3d Cir. 2007). Hartz Mountain does not seem to have been prejudiced in any way by receiving nine days' notice, rather than thirty. Rather, it moved to dismiss and awaited the running of the 30-day period and the inevitable refiling of the action, in a sort of Biglaw version of "Mother, May I"—a game for children. This is not anything like prevailing, or success, "on the merits."[10]

As to a Rule 41(d) award of "costs" in the usual sense, however, Rule 41(d) is self-sufficient; it does not require any independent entitlement based on the substantive law. Hartz Mountain is therefore authorized, if it wishes, to submit a bill of costs for usual and customary items. *See* Fed. R. Civ. P. 54; D.N.J. Loc. Civ. R. 54.1.

## CONCLUSION

For the foregoing reasons, Defendant NY Waterway's motion to join the motion to dismiss is **GRANTED**. The Defendants' motion to dismiss the environmental statutory claims in the Complaint is **GRANTED**. The motion to dismiss is **DENIED** as to all other claims. The Defendants' motion for attorneys' fees is **DENIED**, although Hartz Mountain is authorized to submit a bill of costs under Rule 41(d), Fed. R. Civ. P.

---

[10]  I add that even if fees were awarded, any such award would likely be a small one. It would be confined to fees unnecessarily and duplicatively incurred in moving to dismiss the Initial Action based on insufficient pre-suit notice.

All dismissals are without prejudice to the submission within 60 days of a proposed amended complaint that remedies the defects noted above.

Dated: February 4, 2020

HON. KEVIN MCNULTY, U.S.D.J.